[Civ. No. 13055. First Dist., Div. Two. Aug. 1, 1946.]

RUDOLPH W. VAN NORDEN, Appellant, v. WILFRED G. METSON, as Administrator, etc., et al., Respondents.

Marion Vecki for Appellant.

P. H. McCarthy, Jr., in pro. per., A. B. Dunne, Dunne & Dunne and Joseph Gans for Respondents.

DOOLING, J.—In 1935 appellant (a civil engineer) was employed by Mr. and Mrs. MacKenzie Gordon and Mrs. Gordon's mother (hereinafter called the Gordons). The Gordons were minority stockholders of the Santa Cruz Lime Company. They were asserting a claim, as such minority stockholders, against the Santa Cruz Portland Cement Company for encroachments by the latter company upon the property of the former. The Gordons had discussed the possibility of arbitrating this claim with officers of the Santa Cruz Portland Cement Company and appellant was employed by the Gordons to evaluate their holdings and the damage to their interest in the Santa Cruz Lime Company, with a view to presenting their claims adequately in the proposed arbitration. It was contemplated at the time of his employment that appellant, after completing his evaluation, should act as the Gordons' representative in the anticipated arbitration.

On November 21, 1935, appellant wrote a letter to Mr. MacKenzie Gordon in which he proposed that he be paid for his services either a per diem compensation of $25 or a flat monthly rate of $300.

The letter opened with this language:

"Relative to the work in which you have asked me to act as arbitrator in the matter of an accounting and settlement,

acceptable to Mrs. Gordon and yourself, by the Santa Cruz Portland Cement Company and Santa Cruz Lime Company. . . ."

After proposing the alternative of $25 per day or $300 per month the letter continued with this paragraph (numbered "C"):

"After the arbitration is completed and a final agreement has been arrived at as between yourselves and the Cement company, either for the payment of cash, or other equivalent consideration of value, I am to receive a percentage of the total amount in excess of .$50,000, based on a straight line increase in the percentage commencing at 6.4% and increasing to 8.4% on $50,000 excess, or where the total amount is $100,-000. For any total settlement over $100,000 the same straight line percentage increase shall apply."

In view of the argument made by appellant it may be well to notice at this point that the proposal made in this letter contemplated that appellant was "to act as arbitrator in the matter of an accounting and settlement" and that the percentage compensation on any amount received by the Gordons in excess of $50,000 was to be received only "after the arbitration is completed and a final agreement has been arrived at."

Appellant commenced his work of evaluation but the proposal to submit the Gordons' claim to arbitration was refused by the cement company and appellant knew that the arbitration had been refused on January 21, 1936. Thereafter appellant continued his work of evaluation in preparation for litigation between the Gordons and the cement company. Suit was commenced by the Gordons on July 20, 1936. Appellant assisted the attorneys for the Gordons in the preparation for trial of this action and testified for the Gordons on the trial. Judgment in this action went against the Gordons. They appealed and the District Court of Appeal affirmed the judgment. They petitioned the Supreme Court for a hearing after judgment and their petition was granted by the Supreme Court. While the appeal was pending in the Supreme Court the Gordons' attorneys effected a settlement with the cement company as a result of which the Gordons received $60,650 in settlement of their claim for damages and sold their stock in the Santa Cruz Lime Company for $39,932.

The Gordons had employed Mr. William H. Metson to act as their attorney in this litigation. After the settlement Mr.

Metson proposed to the Gordons that they pay him as his fee one-third of the amounts received by them in the settlement and for the sale of their stock. The Gordons agreed to this on condition that Mr. Metson should pay all unpaid costs of the litigation including the balance due to appellant for his services. Mr. Metson agreed to do so and received from the Gordons $33,572.33. Upon Mr. Metson's death $27,527.33 of this amount was in the form of cashier's checks of the Crocker First National Bank of San Francisco.

Appellant commenced an action asserting his right to be paid out of the amount represented by these checks the balance due him for his services on a per diem basis, plus a percentage of the total amount received by the Gordons both in settlement of their claims for damages and for the sale of their stock. The latter claim was based upon paragraph "C" of appellant's letter of November 21, 1935, quoted above. The court gave judgment to appellant for his services on a per diem basis but denied him a recovery on the percentage basis. From the portion of the judgment denying recovery on the percentage basis plaintiff has taken this appeal.

In his brief counsel for appellant assumes, without any supporting argument or authorities, that the provision for a percentage of any amount received by the Gordons over $50,000 contained in paragraph "C" of his letter of November 21, 1935, is applicable to the amount finally received by the Gordons in settlement of their litigation and as the purchase price of their stock.

We can find no justification for this assumption. The percentage proposal was made in contemplation of appellant's services in an arbitration in which he was to act as an arbitrator representing the Gordons. It was expressly provided to be paid "after the arbitration is completed." Through no fault of the Gordons the arbitration was never completed. It is elementary that where a payment is agreed to be made on the occurrence of a future event and, through no fault of the promisor, the event does not occur there can be no recovery on the promise. (*Lynch* v. *Keystone Con. Min. Co.*, 163 Cal. 690 [126 P. 968]; *Nelson* v. *Dutton*, 63 Cal.App. 717 [220 P. 12]; *Detwiler* v. *Clune*, 77 Cal.App. 562 [247 P. 264]; *Carpenter* v. *Elmer R. Sly Co.*, 109 Cal.App. 539 [293 P. 162]; *Cantwell* v. *Gage*, 111 Cal.App. 209 [295 P. 375]; *Martin* v. *Martin*, 5 Cal.App.2d 591 [43 P.2d 314]; *Stern* v. *Franks*, 35 Cal.App.

2d 676 [96 P.2d 802]; *de Aryan* v. *Akers,* 49 Cal.App.2d 714 [122 P.2d 57].)

■ There is no evidence that after arbitration was refused there was an agreement made by the Gordons with appellant that the percentage provision of paragraph "C" would be applicable to the amount, if any, recovered by them in the litigation or in settlement of the litigation. But if there had been appellant's position would be no better. He testified that the work done by him after the arbitration was abandoned was done in preparation for the trial at which he appeared as a witness. An agreement with a witness to pay him a fee contingent on the success of the litigation is against public policy and void. (*Pelkey* v. *Hodge,* 112 Cal.App. 424 [296 P. 908]; *Von Kesler* v. *Baker,* 131 Cal.App. 654 [21 P.2d 1017].)

Appellant is not helped by the rule referred to in *Wise* v. *Radis,* 74 Cal.App. 765, 779-780 [242 P. 90], that money delivered to a third party by one party to an illegal contract to be paid by the third party to the other party to the illegal contract can be recovered from the third party. The evidence here is not that Metson promised the Gordons to pay any specific sum to appellant, but only that he promised to pay appellant's fee. If, in order to establish his right to recover the percentage appellant must prove an illegal agreement, he clearly cannot recover.

In *Asher* v. *Johnson,* 26 Cal.App.2d 404, 414 [79 P.2d 457], the court quotes with approval the text of 6 California Jurisprudence 160, that "the test is declared to be whether the contract sought to be enforced can be separated from the illegal acts or contracts relied upon as avoiding it, and whether the plaintiff requires any aid from, or must in any way rely upon the illegal transaction in order to establish his case." (*Cf. Kyne* v. *Kyne,* 16 Cal.2d 436, 440-441 [106 P.2d 620].)

■ Appellant cannot complain that portions of the fund were awarded to two attorneys associated by Mr. Metson in the litigation, since he is in no way injured by such awards.

Judgment affirmed.

Nourse, P. J., concurred.

A petition for a rehearing was denied August 31, 1946.